IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL ZAPATA,

    Plaintiff,

v.                                                                                 Civ. No. 15-223 SCY

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

    Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE OR REMAND

**THIS MATTER** is before the Court on Plaintiff Michael Zapata's Motion to Reverse and Remand the Social Security Commissioner's final decision denying Plaintiff supplemental security income. ECF No. 22. For the reasons discussed below, the Court will GRANT Plaintiff's motion and remand this action to the Commissioner for further proceedings consistent with this opinion.

    **I.**    **Background**

Plaintiff is a thirty-four year old man who filed an application for supplemental security income on April 20, 2011, alleging disability due to "mental issues." AR 74. Plaintiff alleged a disability onset date of January 1, 1987. AR 74. Because the parties are familiar with the facts of this case, the following will recount Plaintiff's medical history only to the extent it is pertinent to the issues before the Court.

The record reflects that Plaintiff reported at various times that he suffered from fetal alcohol syndrome, post-traumatic stress disorder (PTSD), bipolar disorder, depression, anxiety, and difficulty focusing or concentrating. AR 190, 298, 201, 207, 301. Plaintiff's medical records reflect diagnoses of some of these conditions, as well as chronic pain syndrome, lumbago, and

1

cognitive impairment resulting from a traumatic brain injury. AR 287, 298, 301, 306, 313, 336.

Plaintiff was evaluated for chemical dependency in May 2011 following a charge of operating under the influence in which he had a blood alcohol content of 0.000. AR 293. The report noted that Plaintiff takes oxycodone on a regular basis for chronic back pain. AR 293. It further noted that Plaintiff takes large doses of pain medication and that he reported withdrawal symptoms. AR 293. The report noted that Plaintiff was prescribed the pain medication. AR 294. Plaintiff reported having used opiates on a regular basis for the preceding five years. AR 294. Plaintiff further reported having used more than prescribed, though the report did not clarify the duration or extent of this type of use. AR 294. At the time of the evaluation, Plaintiff reported being abstinent for the previous seven months. AR 294.

Plaintiff was also referred for counseling services in May 2011 pursuant to a domestic violence charge. AR 298. Plaintiff was evaluated as part of the referral and reported that he had been addicted to oxycontin since 2008 and had started using opiates in 2006/2007. AR 300. Plaintiff reported that he had used heroin within the previous six months but had recently started methadone treatment. AR 300. Plaintiff was assessed as suffering from PTSD and opioid dependence. AR 302.

Dr. Louis Wynne performed a disability determination examination of Plaintiff in October 2011. Dr. Wynne stated that Plaintiff's affect was flat, congruent, with dysphoric mood. AR 310. Dr. Wynne noted that Plaintiff is on "medical cannabis and he used heroin for about 6 months but his sensorium today seemed clear with no indication of any drugs or psychotic process." AR 310. Dr. Wynne assessed Plaintiff's intelligence as "below average." AR 311. Dr. Wynne diagnosed Plaintiff with PTSD and a cognitive disorder as a result of a head injury. AR 313. Dr. Wynne further assessed Plaintiff as suffering from borderline intellectual functioning,

history of head injury, and fetal alcohol effects. AR 313. Dr. Wynne assigned Plaintiff a GAF score of 48. AR 313. Dr. Wynne opined that Plaintiff "can read and understand basic written instructions but his concentration and ability to persist at simple work tasks are at least mildly impaired." AR 312. Dr. Wynne further opined that Plaintiff "could interact with the general public but he would have difficulty interacting with his coworkers and his supervisors." AR 312. Similarly, Dr. Wynne opined that Plaintiff "might have difficulty adapting to changes in the workplace." AR 312.

Also in October 2011, Dr. Alvin Smith conducted a Mental Residual Functional Capacity Assessment of Plaintiff. AR 314. Dr. Smith found Plaintiff moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, and maintain attention and concentration for extended periods. AR 314. Dr. Smith further found Plaintiff moderately limited in his ability to work in coordination with or proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. AR 314-15. In his Section III functional capacity assessment, Dr. Smith opined that Plaintiff "can understand, remember, and carry out simple tasks under routine supervision…[and] can relate superficially to co-workers and supervisors for work purposes." AR 316. Dr. Smith stated that Plaintiff "could interact with the general public." AR 316. Dr. Smith found that Plaintiff suffers the medically determinable impairment of PTSD but made no finding that Plaintiff had a substance addiction disorder. AR 321, 323.

Plaintiff was prescribed various opiate-based medications by nurse practitioner Jason DeLuisa. AR 339.  At various points, Plaintiff was prescribed oxycodone at various strength levels as well as percocet. AR 337. NP Deluisa prescribed Plaintiff the medications for lower

3

back pain caused by a bullet that had been lodged in Plaintiff's back since being shot approximately six years earlier. AR 338. NP Delusia noted that Plaintiff had recently been prescribed suboxone. AR 338. He further noted that Plaintiff rated his pain an 8-9 out of 10 but that the physical exam did not support this level of pain. AR 339. NP Deluisa assessed Plaintiff as suffering from Chronic Pain Syndrome; Sedative, Hypnotic or Anxiolytic Dependence; Lumbago; and PTSD. AR 339. NP Deluisa continued prescribing opioid-based medications to Plaintiff throughout the treating relationship. AR 341, 343. NP Deluisa noted a request by Plaintiff to increase the dosage of his medications. AR 342. NP Deluisa also noted Plaintiff's failure to follow up on referrals to pain management specialists. AR 346. NP Deluisa told Plaintiff that he would stop providing medication to Plaintiff unless Plaintiff sought assistance from these resources. AR 346. NP Deluisa's notes from January 2012 indicate that NP Deluisa no longer felt that Plaintiff needed as much pain medication as he had been requesting and NP Deluisa decided to stop prescribing the medications to Plaintiff. AR 346-47.

In October 2013, Dr. Gayle Riley indicated that Plaintiff had not taken oxycodone for the previous four months. AR 396. Dr. Riley noted that Plaintiff was "distraught" that she would not be prescribing him pain medication. AR 399. Plaintiff was advised of other, non-medication related, pain management techniques. AR 401. Nevertheless, it appears that Plaintiff was prescribed oxycodone during a previous visit at this medical facility by CNP Lori Costa. AR 403. The last date in Plaintiff's medical records indicating that Plaintiff was prescribed oxycodone was November 16, 2013. AR 435.

Also in 2013, Plaintiff submitted to a drug test which came back positive for methadone and THC. AR 383.

In November 2013, Plaintiff presented to CFNP Rolando Flores with complaints of back

and ankle pain. AR 443. CFNP Flores noted that Plaintiff's initial toxicology screening was positive for marijuana, methadone, and methamphetamines. AR 443. Plaintiff denied using methamphetamines and stated that he obtained the methadone "on the street." AR 443. CFNP Flores assessed Plaintiff with "opioid type dependence" and "other, mixed, or unspecified drug abuse." AR 443. CFNP Flores declined to provide Plaintiff with pain medication but offered to continue to treat Plaintiff's pain, which Plaintiff refused. AR 443.

In January 2014, Plaintiff was evaluated by PMHNP Deb Stanger. AR 454. PMHNP Stanger assessed Plaintiff to be suffering from a mood disorder, anxiety, bipolar or borderline personality disorder, and chronic pain. AR 454.

Plaintiff filed his claim on April 20, 2011. AR 17. The claim was initially denied on October 21, 2011 and upon reconsideration on June 8, 2012. AR 17. Plaintiff requested a hearing on June 27, 2012, which was held on October 29, 2013. AR 17.  Following the hearing, the Administrative Law Judge Ann Farris issued her decision on February 28, 2014, finding Plaintiff not disabled. AR 17. Plaintiff appealed the ALJ's decision to the Social Security Appeals Council. AR 1-3. This appealed followed.

## II.     Applicable Law

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R.

§ 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If claimant is not so impaired, she is not disabled and the analysis stops.

(3) If claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, claimant is presumed disabled and the analysis stops.

(4) If, however, claimant's impairment(s) are not equivalent to a listed impairment, claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B.  Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a

6

decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

**III.  Analysis**

Plaintiff contends that the ALJ failed to establish that his mental disorders would not be disabling in the absence of substance use.  ECF No. 22 at 12. More specifically, Plaintiff argues that the ALJ failed to demonstrate that Plaintiff has a "substance use disorder" as defined in SSR 13-2p. ECF No. 22 at 14.  Plaintiff further argues that the ALJ failed to provide sufficient explanation as to how substance abuse caused or affected Plaintiff's mental impairments or how his conditions would improve in the absence of substance abuse. ECF No. 22 at 15.  Because the

Court agrees that the ALJ's determination that Plaintiff suffers from a substance abuse disorder was deficient, the Court will grant Plaintiff's motion.

The Social Security Act provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); 42 U.S.C. § 1382c(a)(1)(J). The Commissioner's implementing regulations state that "[i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability[.]". 20 C.F.R. § 416.935(a); 20 C.F.R. § 404.1535(a). The regulations provide a general framework for this determination.  First, "[t]he key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1); 20 C.F.R. § 404.1535(b)(1). Second, "[i]n making this determination, we will evaluate which of your current physical or mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling." 20 C.F.R. § 416.935(b)(2); 20 C.F.R. § 404.1535(b)(2). Third, [i]f we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. 416.935(b)(2)(i); 20 C.F.R. § 404.1535(b)(2)(i). However, "[i]f we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or

alcoholism is not a contributing factor material to the determination of disability." 20 C.F.R. 416.935(b)(2)(ii); 20 C.F.R. § 404.1535(b)(2)(ii).

In 2013, the Social Security Administration published SSR 13-2p setting forth the process to be followed in conducting a drug addiction and alcoholism (DAA) materiality inquiry. Under SSR 13-2p "a materiality determination is made only when 'the claimant is disabled considering all impairments' and the ALJ has 'medical evidence from an acceptable medical source establishing that a claimant has a Substance Use Disorder.'" *Redman v. Colvin*, No. 12-1039, 2014 WL 652314, *5 (W.D. Okla. Feb. 19, 2014) (unpublished) (citing SSR 13-2p). SSR 13-2p provides a six-step DAA evaluation process to assist in this determination. The first step is determining whether the claimant has DAA.  SSR 13- 2p. If the claimant does not, no DAA materiality determination is necessary. *Id.* If the claimant does have DAA, the ALJ determines at the next step whether the claimant is disabled considering all impairments, including DAA. *Id.* If the claimant is found not disabled at this step, the claim is denied. If the claimant is disabled considering all impairments, including DAA, the ALJ then determines whether DAA is the only impairment. *Id.* If DAA is the only impairment, then the claim is denied.  *Id.* However, if it is not the only impairment, the ALJ must consider whether the other impairments are disabling by themselves while the claimant is dependent upon or abusing drugs or alcohol. *Id.* If the other impairments are not disabling by themselves, the claim is denied; however, if they are disabling by themselves while the claimant is dependent upon or abusing drugs or alcohol, the ALJ must consider whether the DAA causes or affects the claimant's medically determinable impairments. *Id.* If the DAA does not cause or affect the other impairments, the DAA is not material. *Id.* Similarly, if the other impairment is irreversible or could not improve to the point of nondisability, the DAA is not material. *Id*. However, if the DAA could be material and the other

impairments could improve to the point of nondisability in the absence of DAA, the DAA is material and the claim is denied. *Id.*

Plaintiff's first contention challenges the initial determination made under the DAA evaluation process: whether the claimant has DAA. SSR 13-2p states that "a claimant has DAA only if he or she has a medically determinable Substance Use Disorder." SSR 13-2p defines "substance use disorder" as "maladaptive patterns of substance use that lead to clinically significant impairment or distress." SSR 13-2p. Importantly, SSR 13-2p states that because substance use disorders are diagnosed in part by the presence of maladaptive use of alcohol, prescription medications, and toxic substances, "DAA does not include "[a]ddiction to, or use of, prescription medications taken as prescribed, including methadone and narcotic pain medications." SSR 13-2p further emphasizes that "[a] claimant's occasional maladaptive use or a history of occasional maladaptive use of alcohol or illegal drugs does not establish that the claimant has a medically determinable Substance Use Disorder."

In establishing the existence of DAA, SSR 13-2p states that "we must have objective medical evidence—that is, signs, symptoms, and laboratory findings— from an acceptable medical source that supports a finding that a claimant has DAA." SSR13-2p clarifies that "[e]vidence that shows only that the claimant uses drugs or alcohol does not in itself establish the existence of a medically determinable Substance Use Disorder." Listed as specific examples of further evidence that does not, *by itself*, establish DAA are self-reported drug or alcohol use, an arrest for driving under the influence, or a third-party report. SSR 13-2p states that although this type of evidence may suggest that a claimant has DAA, "they are not objective medical evidence provided by an acceptable medical source." Finally, SSR 13-2p emphasizes that even in presence of objective medical evidence, "we must also have evidence that establishes a

10

maladaptive pattern of substance use and the other requirements for diagnosis of a Substance Use Disorder(s) in the DSM."

In the present case, the ALJ found that Plaintiff had the severe impairments of PTSD and opioid dependence. AR 19. Because the ALJ found that Plaintiff had the severe impairment of opioid dependence, she engaged in an analysis similar to that provided by SSR 13-2p. AR 19-21. The ALJ determined that while Plaintiff's impairments met the criteria under listing 12.09 when Plaintiff's substance abuse disorder was considered alongside his PTSD, the ALJ found that if Plaintiff stopped the substance abuse, Plaintiff "would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d))."). AR 21. The ALJ further found that, in the absence of substance abuse, Plaintiff had the residual functional capacity "to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is capable of simple, routine tasks with reasoning level one and no production pace. He can have no interaction with the public and only occasional, superficial interaction with co-workers." AR 22. The ALJ ultimately concluded that, in the absence of substance abuse, Plaintiff would be capable of performing work that exists in significant numbers in the national economy and found Plaintiff not disabled. AR 27.

As noted above, Plaintiff's argument is concerned with the ALJ's initial determination that Plaintiff's opioid dependence necessitated an examination of the materiality of drug addiction to Plaintiff's impairments. In making this determination, the ALJ noted Plaintiff has a history of back pain for which he took large doses of narcotic pain medication, was evaluated for chemical dependency due to a charge of operating while intoxicated, and had participated in a methadone program. AR 20. The ALJ further noted that on one occasion Plaintiff reported using

more than his prescribed pain medication and having been addicted to oxycontin since 2008 and abusing opiates since 2006/2007.

Despite the recitation of this evidence, the Court concludes that the ALJ's analysis supporting her DAA determination is deficient. The record reflects a strong conflict between the evidence the ALJ relies on to support finding DAA and evidence that SSR 13-2p cautions against using as the basis for a DAA determination. The ALJ's decision further lacks sufficient objective medical evidence establishing maladaptive use of narcotic pain medication.

The record reflects that, throughout the relevant time period, Plaintiff was prescribed narcotic pain medication while simultaneously being diagnosed with "opioid dependence." As noted above, SSR 13-2p specifically exempts "addiction to, or use of, prescription medications taken as prescribed, including methadone and narcotic pain medication." Thus, in order to find DAA, there must have existed "objective medical evidence…from an acceptable medical source that supports a finding" of maladaptive use.

In supporting her determination of DAA, the ALJ mostly relied on a report compiled following Plaintiff's charge of driving under the influence.[1] As explained below, however, the ALJ's nearly sole reliance on this report in making her DAA determination is troubling for many reasons. First, the report was submitted by licensed social worker Tony Garcia, and the evaluation appears to have been conducted by a social worker intern. AR 297. Licensed social workers, however, constitute "other

---

[1] To extent ALJ Farris was relying on the arrest itself, SSR 13-p2 states that evidence of an arrest for driving under the influence is insufficient by itself to establish DAA. Nevertheless, when read in context, ALJ Farris's DAA determination relies more heavily on the actual report compiled following the arrest, not the charge of driving under the influence itself.

medical sources" and while evidence from these sources "can be helpful…in determining the severity of DAA and whether DAA is material to the finding of disability," they do not constitute objective medical evidence from an acceptable medical source under SSR 13-2p.

Second, the statements the ALJ highlights from this report—including his statement that he had taken more than his prescribed dosage of pain medication—are based on Plaintiff's self-reported drug use. Under SSR 13-2p, self-reported drug use is listed as an example "of evidence that by itself does not establish DAA." Like reports from "other medical sources," while such evidence "may suggest that a claimant had DAA…they are not objective medical evidence provided by an acceptable medical source." More importantly, however, SSR 13-2p emphasizes that "a claimant's occasional maladaptive use or a history of prior maladaptive use of alcohol or illegal drugs does not establish that the claimant has a medically determinable Substance Use Disorder." As SSR 13-2p recognizes, this type of evidence can be considered in conjunction with acceptable medical evidence to support a finding of DAA. However, in making her DAA determination, the ALJ does not cite other acceptable medical evidence, considered either singularly or in combination with the above, that establishes maladaptive use. Accordingly, the Court concludes that the ALJ's determination of DAA was deficient.

Furthermore, Defendant's arguments that evidence discussed elsewhere in the ALJ's decision supports the DAA finding are unpersuasive.[2] Defendant points out evidence that Plaintiff engaged in drug-seeking behavior and, at a later date, tested

---

[2] The Court notes that Defendant argues that "[t]he ALJ applied the correct legal standards and cited to more than one instance of sobriety as evidence that Plaintiff's condition improved if he stopped drinking." ECF No. 26 at 5. However, the condition at issue is opioid dependence, not alcohol.

positive for marijuana, methadone, and methamphetamine. ECF No. 26 at 6.  As SSR 13-2p states, however, "[a] single drug or alcohol test is not sufficient to establish DAA as a medically determinable impairment, nor does it provide pertinent information that can help us determine whether DAA is material to a finding of disability."

Moreover, as to Plaintiff's "drug-seeking" behavior, Defendant's argument on this point actually highlights the deficiencies in the ALJ's analysis. Plaintiff may very well have engaged in drug-seeking behavior in which he sought prescriptions for pain medication that he really did not need.  The Court also agrees that comments from some medical care providers indicates that those medical providers became skeptical that Plaintiff truly needed the pain medications he sought.  But the ALJ failed to provide analysis that would support rejecting the medical conclusion inherent in a decision to prescribe Plaintiff pain medication – that Plaintiff had a legitimate medical need for such medication at the time it was prescribed.

In the Court's view, Plaintiff's records which reflect that Plaintiff was continually prescribed narcotic medications while simultaneously being diagnosed as opioid dependent necessitated further examination of his opioid dependence beyond reliance on a single evaluation noting self-reported maladaptive use.  As SSR 13-2p emphasizes, "Adjudicators must provide sufficient information so that a subsequent reviewer considering all of the evidence in the case record can understand the reasons for…[t]he finding that the claimant has DAA."  The ALJ failed to provide sufficient analysis or information supporting her DAA determination and her decision must therefore be reversed.

    **IV.**    **CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand (ECF No. 22) is GRANTED.  The Court therefore reverses the Commissioner's decision denying Plaintiff benefits and remands this action to the Commissioner to conduct further proceedings consistent with this opinion.

_____
UNITED STATES MAGISTRATE JUDGE
Sitting by Consent